IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


JUSTIN LYNN DALTON,

                    Plaintiff,

          vs.                          Case No. 13-3089-SAC

KRISTINE AULEPP,

                    Defendant.


**<u>MEMORANDUM AND ORDER</u>**

     This matter comes before the court upon defendant's Motion
for Summary Judgment (Doc. 15) and plaintiff's "Memorandum in
Opposition" (Doc. 18) to defendant's motion.   Having fully
considered these pleadings and all materials in the file, the
court concludes for the following reasons that defendant Aulepp
has shown that "no disputed material fact exists regarding the
defenses asserted" and movant is entitled to a judgment as a
matter of law."   Rule 56(a), Federal Rules Civil Procedure;
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986).


**<u>BACKGROUND</u>**

     At the time this *Bivens*[1] action was filed, Mr. Dalton was an
inmate of the United States Penitentiary, Leavenworth, Kansas

---

[1]   *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403
U.S. 388 (1971).

(USPL).[2]  In his complaint, Mr. Dalton claimed that he was being denied necessary medical treatment for his two major health issues: Hepatitis C (HCV) and a bone infection in his spine, that treatment has been delayed, and that he has been denied stronger medication necessary for his chronic back pain.  In support of his claims, plaintiff alleged the following.  He entered federal prison in 2010 with serious health conditions of which his sentencing judge was aware.  In February 2012, he was transferred from FCI-Talladega to FCI-Williamsburg, Salters, South Carolina.  During this time he encountered delays in treatment because "procedures and tests" were "mostly restarted" and he was given "medication that doesn't help and is horrible on (his) liver."  In July 2012, medical staff at Williamsburg submitted his case for approval for HCV treatment; however, he was bussed to the USPL the following day.  Upon his confinement at the USPL, he "had medications taken from" him and was "placed only on Tylenol and Gabapentin" both of which are not sufficient for chronic pain and "horrible on your liver" especially for persons with HCV.  Dr. Aulepp took him off medications prescribed by prior physicians and refused to switch him to "a proper pain med with less effects" on his damaged liver.  He has

---

[2]     Plaintiff is currently confined at the USP-Terre Haute in Indiana.  His claims against Dr. Aulepp for injunctive relief were rendered moot by this transfer.

suffered "severe chronic pain throughout (his) entire stay" at the USPL.

In addition to his medical claims, plaintiff asserts that work assignment and "housing orders" violated his rights under the Equal Protection Clause and the Eighth Amendment in that they amounted to cruel and unusual punishment. In support he alleges that he was mistakenly assigned to a top bunk and that "even though the doctor said" he was not cleared "for food service," he was placed in food service for around two months where he worked as a server and possibly contaminated others.

Plaintiff seeks declaratory and injunctive relief in the form of a court order requiring defendant to provide him with "a civilian style medicine for pain," in particular "Oxycodone or Morphine;" a spine biopsy to determine type of infection; and to have him " prepared by liver specialist and infectious disease specialist" for him "to undergo hepatitis treatment immediately." In addition, he seeks nominal, compensatory, and punitive damages.

In a prior order, the court converted defendant Aulepp's Motion to Dismiss to a Motion for Summary Judgment, gave Mr. Dalton time to respond to defendant's motion, and notified plaintiff that in formulating his response he must adhere to the

requirements of Rule 56.[3]  See *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007).  Plaintiff was cautioned that a party opposing a properly supported motion for summary judgment "must set forth specific facts showing a genuine issue for trial."  *Id.* Plaintiff was further instructed that in order to adequately oppose this summary judgment motion, he was required to file a "Memorandum in Opposition" that included the following.  It must "begin with a section containing a concise statement of material facts as to which (he) contends a genuine issue exists;" and each fact that he claims is in dispute must be numbered and

---

[3]    FRCP Rule 56(c) Procedures, provides in pertinent part:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

(2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.

(3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.

(4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

"refer with particularity to those portions of the record upon which (plaintiff) relies." He was also informed that he was required to abide by Subsection (d) of Rule 56.1 (Presentation of Factual Material), which provides:

> All facts on which a motion or opposition is based must be presented by affidavit, declaration under penalty of perjury, and/or relevant portions of pleadings, depositions, answers to interrogatories, and responses to requests for admissions. Affidavits must be made on personal knowledge and by a person competent to testify to the facts stated that are admissible in evidence. Where facts referred to in an affidavit or declaration are contained in another document that is not already a part of the court file, a copy of the relevant document must be attached.

*Id.* Finally, Mr. Dalton was specifically advised that defendant Aulepp had raised the affirmative defense of failure to exhaust and if she met her initial burden of demonstrating that "no disputed material fact exists regarding" this affirmative defense, he "must then demonstrate with specificity the existence of a disputed material fact." *Id.*


**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In her Motion for Summary Judgment, defendant Dr. Aulepp argues that plaintiff failed to exhaust administrative remedies on his claims against her concerning conditions at the USPL. Defendant asserts that as a result, this action must be dismissed pursuant to 42 U.S.C. § 1997e(a). Defendant argues

additional grounds for dismissal including that she provided necessary and proper medical treatment to plaintiff at the times in question and thus he cannot show deliberate indifference and establish a violation of the Eight Amendment.

## PLAINTIFF'S OPPOSITION TO MOTION

In opposition to defendant's motion, plaintiff first addresses her argument that he failed to exhaust administrative remedies, which he recognizes as "their strongest argument." Plaintiff alleged the following in his complaint with respect to exhaustion. He filed a grievance prior to his confinement at the USPL, and "the most recent remedy" was returned from Central Office. He "had a hard time getting grievances answered" at the USPL and "used all" remedies to no avail prior to filing this action. He stated that he enclosed the "most important" grievances.[4] In his Opposition, plaintiff argues that the USPL is the third prison he has been housed in since his confinement began in March 2010 and claims "there is no way to win if they continue to move you around."[5] He also argues that since

---

[4]   Plaintiff encloses his 2011 grievance only and none that were filed at the USPL.

[5]   Plaintiff also asserts that he has been "denied due process" by his "inability to stay at one spot." He ignores that he requested transfers. In any event he alleges no facts whatsoever to support this claim and generally, due process is not a prerequisite to inter-prison transfer.

defendant Aulepp is an employee of the Bureau of Prisons (BOP) he was "her responsibility" and he should not have to exhaust "in-house" administrative remedies at every prison "when it is all in some file."  He appears to also argue that exhaustion should not be required on his claim against Dr. Aulepp in her individual capacity[6] because her duty to protect him under her "HIPPA oath" is "unrelated to prison standards."[7]

With respect to his medical claims, plaintiff makes the following arguments.  "FCI Williamsburg" had completed his HCV treatment packet "and already had (him) cleared through two ortho visits saying (he) was okay," then at the USPL the "same excuses come into effect."  It is unfair that he has been "shifted around" and had to go through the "months long process" to get the same responses when he has been within the "same system."  He is only 23 years old, part of his sentence was to provide adequate time for him to receive proper medical care. Instead, a "ton of testing" has been done to establish his condition, and his medical issues have not been resolved.  He "should have received more treatment and not just tests" and will be released from prison without the medical treatment he

---

[6]     Plaintiff appears to concede that his claim fails against defendant in her official capacity, and it does due to the doctrine of sovereign immunity.

[7]     This argument simply has no legal merit.  An inmate litigant is required to exhaust administrative remedies on claims against prison employees in their individual capacities.

needs.  Defendant Aulepp in her motion falsely accused him of assaulting another inmate to affect his credibility with the court and falsely stated that he has had past substance abuse problems.  However, he has never had an incident report related to drug use in prison.  He disagrees with defendant's statement that he "never had to use narcotics to treat (his) long term pain" and counters with names of two doctors and pharmacies in Tennessee who apparently provided narcotic pain medications for his chronic back pain prior to his incarceration.  He has not been allowed to take narcotic drugs in prison because he has never been assigned to a Federal Medical Center, where it "couldn't have ever been an issue."  Finally, plaintiff argues that he should be provided narcotic pain medications at the USPL because pain medications are "closely monitored" so there is "no risk of abuse" and he is willing to sign any type of contract to receive these medications.

**UNDISPUTED FACTS**

The court finds the undisputed facts to be as follows.

1.  Plaintiff was incarcerated at the Federal Correctional Institution in Talladega, Alabama (FCI-Talladega) from March 31, 2010, through February 2, 2012.  He was incarcerated at FCI-

Williamsburg in South Carolina, from February 10, 2012 through July 27, 2012.  He arrived at the USPL on August 29, 2012.

2.   The Federal Bureau of Prisons (BOP) provides a four-part Administrative Remedy Program designed to address a federal inmate's concerns regarding any aspect of his or her confinement.  First, an inmate is required to attempt informal resolution of the grievance.  Second, if the grievance is unsuccessful at this level, then the inmate must file the complaint with the attached informal resolution to the Warden. 28 C.F.R. § 542.14.  Third, if dissatisfied with the Warden's decision, the inmate may appeal an adverse decision to the Regional Director.  28 C.F.R. § 542.15(a).  Fourth, if dissatisfied with the Regional Director's response, the inmate may appeal that decision to the National Inmate Appeals Administrator, in the Office of the General Counsel in Washington D.C.  Regardless of the level of the appeal, the inmate must state specifically the reason for his appeal, and he may not raise any issues not raised at the lower level.  28 C.F.R. § 542.15(b)(1)-(2).  No administrative remedy is considered fully and finally exhausted until it has been denied by the National Administrator.

3.   The BOP maintains a nationwide database of "all administrative complaints filed within the BOP's Administrative

Remedy Program" known as SENTRY.   Relevant SENTRY records indicate the following.   On August 9, 2011, plaintiff initiated Administrative Remedy No. 651490-F1 at the FCI-Talladega.   He claimed that Health Services was not providing treatment for his HCV and a mass on his spine and requested proper treatment.   The Warden responded on August 18, 2011.   Plaintiff filed his regional appeal on September 15, 2011   He claimed that medical staff at the FCI-Talladega delayed his HCV treatment for over a year and indicated "he was willing to sign waivers to start the process."   His regional appeal was denied on November 4, 2011.[8] On December 6, 2011, while plaintiff was at Talladega, he filed his appeal to the National Inmate Appeals Administrator.   *See* Doc. 1-1 at 16.   He claimed that medical staff should not have waited until his moods were unstable to evaluate him for HCV treatment, his treatment should have begun at the start of his incarceration in March 2010,   and his HCV is a life-threatening condition necessitating immediate treatment.   He also argued

---

[8]   Plaintiff attached to his complaint a copy of the response to his Regional Appeal (No. 651490-R1).   Complaint (Doc. 1-1) at 13.   This administrative record indicated that plaintiff's "civilian medical records" had been received and reviewed by the Clinical Director at Talladega on June 13, 2011.   These records included a 2008 MRI and biopsy that showed "mass lesions" on plaintiff's spine that were "negative for acute malignancy and negative for acute and chronic infection."   Plaintiff was advised in this response as to the "many factors" considered in assessing the appropriateness of, and best timing for, treatment of inmates with chronic HCV infection. Two contraindications specifically mentioned were unstable mental condition and relative risks of treatment.   It was noted that plaintiff had been advised by a BOP psychiatrist in April 2011 that he was not a good candidate for HCV treatment because his mood was unstable, and that condition had not improved on new medication as of October 2011.

that his chronic thoracic region pain was a "big factor" in his mood and would be alleviated with stronger pain medications such as Hydrocodone or Oxycodone.  He asked for these "proper" pain medications and transfer to "any" Federal Medical Center where he could get proper "pysch (sic)", back, and HCV treatment.  The National Administrator responded on February 15, 2013, that Mr. Dalton had received standard care and treatment and should seek medical attention through normal sick call procedures if his conditions worsened.[9]

4.  Mr. Dalton was transferred to the USPL prior to his receipt of the National Appeals Administrator's response.  He was first medically evaluated at the USPL on August 29, 2012, during his intake screening process.  On his Health Intake Assessment/History form he "self-reported he had Hepatitis C, Bi-Polar, Antisocial Personality disorders, history of a head injury, and pain in his back and knees."  On this date, medical

---

[9]    The National Administrator repeated the findings in the regional response and found the following.  Mr. Dalton had been advised on November 29, 2011, that due to his mental condition "treatment was not warranted according to the March 2011 BOP Guidelines, Stepwise Approach for the Prevention and Treatment of Hepatitis-C and Cirrhosis."  On July 26, 2012, Dalton was identified in an administrative note as "currently being worked up for treatment consideration" and was "awaiting lab results, pending transfer."  "[T]he record reflects" that Dalton received standard care and treatment.  "Given this information," subsequent "diagnosis and treatment intervention was "deferred" to the Health Services staff at the local level."  Doc. 1-1 at 15.  Dalton was "advised to follow-up at (his) next institution."  It was also found that plaintiff was "currently receiving appropriate pain management for his chronic back pain;" that his transfer to a Federal Medical Center was unnecessary at that time; and that, according to Dalton's medical record of January 22, 2013, he was scheduled to see an orthopedic surgeon for evaluation.

staff screened plaintiff and noted his Hepatitis C condition, his mental health history, and his current back and knee pain. They also specifically noted his "significant substance abuse history, including the use of opiates, methamphetamine, marijuana, cocaine, and barbiturates."[10]

5. Dr. Aulepp reviewed plaintiff's chart upon his intake at the USPL and continued his prescription for Gabapentin per telephone. A week later on September 6, 2012, she physically examined Mr. Dalton. She noted in the record that he "has a mostly complete packet (for HCV treatment) that was done at a previous institution." However, she also noticed his history of abnormal MRI "of the spine" that "may be chronic osteomyelitis" and the May 2012 recommendation for a "repeat MRI in 6 months." She continued plaintiff's prescription for gabapentin and added acetaminophen with directions to use sparingly. She also ordered lab tests relating to his HCV and the follow-up MRI.[11]

6. The follow-up MRI was performed on November 1, 2012. The radiologist performing this test noted prominent abnormalities of the spine, and advised that:

---

[10]   Plaintiff's argument that defendant lied about his having "significant substance abuse history" supported only by his allegation that he has not had a drug use incident report in prison is refuted by this finding made from his statements in intake interviews and his medical records."

[11]   Many of these facts appear in the exhibits attached to plaintiff's complaint as well as Dr. Aulepp's Declaration provided with the Motion for Summary Judgment.

> the primary consideration would be an infectious
> process such as discitis and osteomyelitis. Since
> this is reported to be a long-standing problem a
> tuberculous or fungal infection need to be considered.
> . . .

Dr. Aulepp reviewed this MRI, and on November 2, 2012, "made a referral to an orthopedic spine surgeon."

7.  Dr. Aulepp exercised her medical judgment based upon her knowledge of the following. Antiviral therapy in the form of a treatment regimen with Pegylated Interferon and Ribavirin is very toxic with side effects that include red blood cell and bone marrow suppression. Prior to the initiation of antiviral therapy, it is necessary to ensure that no unusual medical or mental health condition exists which may interfere with the antiviral therapy or that can be adversely affected by such treatment. The use of this treatment is inappropriate when a bone infection is present. Mr. Dalton's immune system would be suppressed during treatments, preventing his body from being able to fight an active bone infection and/or keep it from spreading. Dr. Aulepp determined in accordance with BOP HCV treatment guidelines that, due to plaintiff's unresolved potential osteomyelitis of the spine, antiviral therapy should not be initiated when Mr. Dalton first arrived at the USPL and that delaying such treatment was medically necessary.

8.   Plaintiff sent an e-mail to Health Services inquiring about his MRI results.[12]  In this e-mail, he also stated:  "The Gabapentin works well for the nerve pain," but "the Tylenol just isn't cutting it for the bone pain."  Complaint (Doc. 1-1) at 18.  Defendant responded to plaintiff that the radiologist that read the MRI felt Dalton had "a longstanding infection" in his spine, and that he "cannot undergo HCV treatment if there is an undiagnosed/untreated infection in your spine."  She advised plaintiff to "please let us work that up and get it treated."

9.   Plaintiff's spinal condition was evaluated by Dr. Aulepp.   Between November 2012 and July 2013, plaintiff underwent various testing and specialist consultations for his spinal condition to rule out a potential on-going bone infection.

10.  On January 18, 2013, plaintiff complained of his back pain and asked at a clinical encounter if he could be transferred.  The clinician noted that plaintiff is "scheduled for consult."  At an encounter on February 20, 2013, plaintiff complained that "Gabapentin was not enough for the pain," and the clinician noted that plaintiff was "waiting to see

---

[12]   Plaintiff makes much of the fact that Dr. Aulepp initially responded they were awaiting the MRI results.  This error was resolved, and the record shows instead that she had actually viewed the results and ordered a consult within a day of their receipt.  Plaintiff's implication that her initial erroneous statement somehow evinces a delay in medical treatment or culpable motive is frivolous.

Orthopedic surgeon." Plaintiff was also seen by Dr. Aulepp on February 20, 2013, for Chronic Care. Dr. Aulepp again noted that he "had a possible chronic osteomyelitis that is holding up his consideration for (HCV) treatment" and an "appointment to see the spine surgeon in a couple days." Dr. Aulepp also reported that Pamelor pain medication, suggested by another clinician, could not be added to Gabapentin and she would discuss options with plaintiff. A follow-up visit was scheduled for August 19, 2013.

11. On April 9, 2013, "at an ortho visit" plaintiff was admitted to St. Lukes Hospital, where he "had to undergo multiple tests." He was returned to the USPL on April 11, 2013.

12. Plaintiff filed this action a month after this hospitalization and before his next follow-up appointment with Dr. Aulepp.

13. On July 17, 2013, plaintiff had a final repeat MRI that ruled out ongoing osteomyelitis. He was advised of the findings. Dr. Aulepp considered him for antiviral therapy to begin in the fall 2013. Additional lab tests had to be done and plaintiff's conditions monitored in order to make adjustments to treatment. However, USPL lost its contract phlebotomist and attempts in the fall of 2013 to find a replacement faltered.

Dr. Aulepp was not involved in efforts to find and hire a phlebotomist.

14.    In the meantime, Dr. Aulepp continued to find from plaintiff's laboratory testing and her examinations and observations of him that he did not exhibit an immediate need for HCV treatment.   Thus, plaintiff was anticipated to start antiviral therapy in February or March of 2014.   Plaintiff's condition continued to be monitored, and Dr. Aulepp considered new alternative treatments.

15.    On February 26, 2014, Dr. Aulepp met with plaintiff and discussed new treatment options including Sofosbuvir, an alternative oral medication for HCV that had very recently been approved by the FDA.   She also discussed others that would likely be available within one year.   Plaintiff opted for treatment with Sofosbuvir, which has "around the same effectiveness as the antiviral therapies, but with fewer side effects.   The BOP is also examining the potential use of other alternative oral medications, which have even greater success rates.

16.    Plaintiff's case was submitted for evaluation by BOP medical staff.   Even though plaintiff's condition did not indicate that he would have significant decompensation in the next year, he was approved for treatment with Sofosbuvir based

16

on his elevated liver function tests.  The Sofosbuvir treatment regime lasts approximately 24 weeks, and requires a medical hold to avoid transfers during the treatment period for close monitoring.  Dr. Aulepp found at this time that while plaintiff's current HCV condition could benefit from treatment, it was not in immediate need of treatment and did not appear likely to worsen within the next year or be impacted by delay.[13]

17.  Dr. Aulepp provided non-narcotic medications that were previously prescribed for plaintiff's back pain and closely monitored and counseled him as to his medications during clinic visits.

18.  After plaintiff's arrival at the USPL, he filed several administrative remedies.  However, SENTRY records show that he did not file any complaining about the treatment for his medical conditions provided by Dr. Aulepp at the USPL.  Thus, when plaintiff filed the instant complaint on May 21, 2013, he had not filed any administrative grievance regarding his medical care at the USPL and by Dr. Aulepp.

**DISCUSSION**

---

[13]  The Assistant U.S. Attorney representing defendant in this case notified the court on December 2, 2014, that a copy of The Withdrawal of Counsel (Doc. 20) filed by his office and mailed to Mr. Dalton at the USPL was returned to sender as "No Longer Here," and a search of the BOP inmate locator website indicated that Mr. Dalton is incarcerated at the USP-Terre Haute.  Plaintiff did not notify the court of his change of address, and the court has not been advised as to the current status of his treatment.

### *Exhaustion of Administrative Remedies*

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies prior to filing a lawsuit in federal court regarding prison conditions.  Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.*  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).  The "inmate may only exhaust by properly following all the steps laid out in the prison system's grievance procedures."  *Little,* 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim. . . . " *Id.* (citing *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002)).  "Defendants . . . bear the murder or asserting and proving that the plaintiff did not utilize administrative remedies."  *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)(citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)); *Roberts v. Barreras*, 484 F.3d

1236, 1241 (10th Cir. 2007).  However, "[o]nce a defendant proves that a plaintiff failed to exhaust, . . . the onus falls on the plaintiff to show that remedies were unavailable."  *Tuckel*, 660 F.3d at 1254.

At the outset the court notes that, in making his opposing arguments, plaintiff does not adhere to Rule 56 by citing "particular parts of materials in the records" such as documents or declarations.  His allegations that he has been unable to provide legal citations do not justify this omission.  Neither Rule 56 nor this court directed plaintiff to counter defendant's motion with additional legal citations.  Plaintiff does not dispute that BOP remedies were available to him at the USPL.  Nor does he present any evidence to dispute defendant's evidence that he did not file a grievance regarding his medical treatment at the USPL by Dr. Aulepp prior to filing this action.[14]

Instead, plaintiff argues that he exhausted his administrative remedies by way of the BOP inmate grievance that he initiated in 2011 at the FCI-Talladega (651490-F1) and that he should be able to rely upon the National Appeals Administrator's response on appeal of that grievance as proof that he fully exhausted.  However, the complaint in this action

---

[14]   Plaintiff's bald statement in his complaint that he had a hard time getting grievances answered at the USPL is not supported by any factual allegations and is called into question by the record, which shows that he filed several grievances at the USPL on other matters.

raises "distinct issue(s)" from the claims raised by Mr. Dalton in his 2011 grievance. In his complaint, plaintiff sues Dr. Aulepp for her alleged failure to immediately begin treatment for his HCV upon his arrival at the USPL and her continued delay of treatment as well as for her refusal to prescribe the pain medications he desired. Even though the underlying medical issues are similar to those he raised while at another prison, "the similarity of issues alone is insufficient to satisfy exhaustion of administrative remedies." *Barnes v. Allred*, 482 Fed.Appx. 308, 312 (10th Cir. 2012)(citing *see Ross v. County of Bernalillo*, 365 F.3d 1181, 1188 (10th Cir. 2004)("Nor does a grievance exhaust administrative remedies for all future complaints of the same general type."), *overruled on other grounds by Jones* 549 U.S. at 223-24; *see also Sayed v. Profitt*, 415 Fed.Appx. 946, 949 n.4 (10th Cir. 2011), *cert. denied*, --- U.S. ----,(2011)).

Moreover, plaintiff's 2011 grievance was filed nearly two years before his transfer to the USPL and before the treatment of his conditions by defendant Dr. Aulepp began in August 2012. Only a grievance filed by plaintiff about his medical treatment after August 2012 at the USPL would provide prison officials with information to internally address his claims against Dr. Aulepp. "[A] grievance satisfies § 1997e(a)'s exhaustion

requirement so long as it provides prison officials with enough information to investigate and address the inmate's complaint internally." *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla. ex rel. Dep't of Human Servs.*, 519 F.3d 1242 (10th Cir. 2008).  His 2011 grievance could not have provided such information because the events upon which the complaint against Aulepp is based had not yet occurred.  "A grievance 'cannot exhaust administrative remedies for claims based on events that have not yet occurred.'" *Barnes*, 482 Fed.Appx. at 312 (citing *Ross*, 365 F.3d at 1188).  In sum, because Dalton's "BP-9 grievance was filed prior to the occurrence of those events which form the basis for his civil complaint, that grievance is insufficient for the purposes of proving exhaustion of administrative remedies." *Id.*

The court concludes that plaintiff has failed to show that he exhausted administrative remedies based on the actions or inactions of defendant Aulepp alleged to have occurred during his confinement at the USPL.  *See e.g., Stone v. Albert*, 257 Fed.Appx. 96, 100 (10th Cir. 2007) (noting that uncontradicted affidavit of prison records custodian was sufficient to establish that prisoner failed to exhaust administrative remedies).  Thus, plaintiff has failed to show there is a "genuine issue for trial" as to exhaustion of administrative

remedies.   See *Matsushita Elec. Indus. Co.*, 475 U.S. 574, 586–87 (1986).   Accordingly, the motion for summary judgment filed by defendant Aulepp shall be granted pursuant to 42 U.S.C. § 1997e(a) because plaintiff failed to exhaust the available administrative remedies.

### Denial of Medical Treatment Claim

Even if plaintiff had demonstrated exhaustion, defendant Aulepp would still be entitled to summary judgment because the facts as developed in the summary judgment record plainly show that no Eight Amendment violation occurred.

The United States Supreme Court has held that an inmate advancing a claim of cruel and unusual punishment based on inadequate provision of medical care must establish "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).   The "deliberate indifference" standard has two components: an objective component requiring that the pain or injury be "sufficiently serious"; and a "subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).   To satisfy the objective component, the inmate must show the presence of a "serious medical need," that is, "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105;

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety."  *Martinez*, 430 F.3d at 1304 (citing *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).  In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he (or she) must also draw the inference."  *Id*. at 1305 (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

"[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106; *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  Likewise, a mere difference of opinion between the inmate and prison medical personnel over the adequacy of medical treatment does not provide the basis for an Eighth Amendment claim.  See *Estelle*, 429 U.S. at 106-07; *Handy v. Price*, 996 F.2d 1064, 1067 (10th Cir. 1993)(affirming that a quarrel between a prison inmate and the doctor as to the appropriate treatment for hepatitis did not successfully raise an Eighth Amendment claim); *Ledoux v. Davies*, 961 F.2d 1536 (10th Cir. 1992); *El'Amin v. Pearce*, 750 F.2d 829, 833 (10th Cir. 1984);

*Smart v. Villar*, 547 F.2d 112, 114 (10th Cir. 1976)(Where the complaint alleges a "series of sick calls, examinations, diagnoses, and medication," it "cannot be said there was a 'deliberate indifference' to the prisoner's complaints."). As the United States Supreme Court has explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medial mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.

*Estelle*, 429 U.S. at 105-106. The prisoner's right is to medical care—not to the type or scope of medical care he personally desires.

The Court has reviewed the extensive records provided by defendant in support of her motion, treated plaintiff's verified complaint as his affidavit, and carefully reviewed the medical records attached to plaintiff's complaint. The records before this court contain ample evidence supporting defendant's assertions that plaintiff was provided medical attention and treatment by Dr. Aulepp from the time he arrived at the USPL up

to the time this complaint was filed.  Plaintiff's perception that he was cleared for and entitled to immediate HCV treatment upon his arrival at the USPL and his lay opinion that such treatment was medically necessary during his confinement at the USPL are not supported in the medical records.  The undisputed evidence before the court plainly shows that Dr. Aulepp exercised her professional medical judgment with regard to plaintiff's HCV condition, his spine condition, the medically-appropriate timing of treatment, and his medications.  Plaintiff alleges no facts and provides no competent evidence to contradict these records.  It follows that plaintiff fails to state a constitutional claim of denial of medical treatment.

In addition, the record shows nothing more than a difference of opinion between the wishes of the patient Mr. Dalton as to his treatment and medications and the professional diagnosis and treatment provided by defendant Dr. Aulepp.  A difference of opinion between a physician and a patient does not amount to a constitutional violation or sustain a claim under § 1983.  *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968); see *Taylor v. Ortiz*, 410 Fed.Appx. 76, 79 (10th Cir. 2010)(upholding summary judgment for the defendants because their undisputed medical attention rendered the denial of Interferon treatment a mere disagreement over the proper

treatment for the plaintiff's Hepatitis C), *cert. denied*, ---U.S. ----, 131 S.Ct. 2153, 179 L.Ed.2d 939 (2011); *Free v. Unknown Officers of the Bureau of Prisons*, 103 Fed.Appx. 334, 336-37 (10th Cir. 2004)(holding as a matter of law that the denial of Interferon to a prisoner with Hepatitis C did not violate the Eighth Amendment because it involved a mere disagreement over the proper treatment).

Furthermore, plaintiff alleges at most a delay in medical treatment for his HCV. In situations where treatment has been delayed rather than denied altogether, the Tenth Circuit Court of Appeals requires that the inmate suffered "substantial harm" as a result of the delay. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). Mr. Dalton alleges no facts showing that delay of anti-viral treatment for his HCV for the purpose of resolving a possible bone infection caused him substantial harm. His allegation that delay in implementing treatment caused his HCV to progress and get "worse and more deadly" is nothing more than a conclusory statement. On the other hand, even after plaintiff was cleared as to the possible bone infection, Dr. Aulepp determined in her medical judgment that plaintiff was not in need of immediate treatment for his HCV and continued to monitor

his condition as well as consider and advise him as to potential new alternative treatments.

Finally, plaintiff's complaint regarding Dr. Aulepp's diagnosis as to the progression of his HCV condition and her judgment that he was not in need of immediate treatment is at most a claim of negligence. The same is true of his complaint regarding the non-narcotic medications she prescribed for his back pain. As noted, negligence does not amount to a federal constitutional violation.[15]

The court concludes that, even viewing the uncontroverted facts in the light most favorable to the plaintiff, a reasonable jury would not find in favor of plaintiff with respect to his claim against defendant Aulepp for denying or delaying treatment for his HCV and back pain. Accordingly, defendant's motion for summary judgment is granted on this additional ground.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 15) is sustained, and that this action is dismissed without prejudice.

**IT IS SO ORDERED.**

Dated this 19th day of February, 2015, at Topeka, Kansas.

---

[15]    A claim that a federal official has acted negligently must be presented under the Federal Tort Claims Act, which has its own strict exhaustion prerequisites.

s/Sam A. Crow
U. S. Senior District Judge